UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-14-0387 EMC |
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| DARRELL BUCKINS, | |
| Defendant. | |

Defendant Darrell Buckins has been charged with one count of escape in violation of 18 U.S.C. §§ 751(a) and 4082(a). Under § 751(a),

> [w]hoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both . . . .

*Id.* § 751(a). Under § 4082(a), "[t]he willful failure of a prisoner to remain within the extended limits of confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title [18 U.S.C. § 751 *et seq.*]." 18 U.S.C. § 4082(a).

///
///
///
///

## I. TRIAL DATE & LENGTH OF TRIAL

Jury selection shall be held on March 30, 2015, at 8:00 a.m.

The jury trial shall begin immediately thereafter, with opening statements. The parties shall be prepared to commence the presentation of evidence on Monday, March 30. Trial days shall last from 8:30 a.m. to 4:00 p.m. (possibly longer), except that on Wednesday, trial shall end at 2:00 p.m. Thursdays are dark. The trial will take no longer than one week.

## II. GOVERNMENT'S WITNESSES & EXHIBITS

A.  Government's Witnesses

The government has identified the following individuals as witnesses it may call in its case-in-chief.

(1) Elbert Jarvis
(2) Daionne Washington
(3) Gelila Abdulkadir
(4) Karen Mason
(5) Melody Daniel
(6) Shelley Mayes
(7) Fidelis Ogwu
(8) Keith White
(9) Sergeant Michael Moody
(10) Officer Anthony Scafani
(11) Officer David Goff
(l2) Sergeant Sullivan
(13) Sergeant Sean Griffin
(14) Officer Eduard Ochoa
(15) Officer Mustafich
(16) Officer Gabriel Alcaraz
(17) Officer Octavio Magana
(18) Deputy Wai Man Leung

Based on the Court's rulings below, the testimony of some of these witnesses shall not be permitted and/or shall be limited.

B.  Government's Exhibits

The government has provided its exhibit list. In its filing, it notes that it "has included some documents on the Exhibit List that it does not yet have but anticipates obtaining before trial." Docket No. 41, at 1-2 (government's exhibit list). **If it has not already done so, the government shall lodge and serve any such exhibits by March 18, 2015.**

Mr. Buckins has objected to the government's Exhibits Nos. 36-42, which relate to his arrest for armed robbery on December 19, 2013. The government has indicated, however, that these exhibits will be used to refresh a witness's recollection only – *i.e.*, it will not ask for the exhibits to be admitted into evidence. To the extent the government may still seek admission of this evidence, the Court shall address the issue of admissibility below, in conjunction with the motions in limine.

### III.   DEFENDANT'S WITNESSES & EXHIBITS

A.  Defendant's Witnesses

"The defense has not made a final determination of which, [if] any defense witnesses it will call." Docket No. 39, at 2 (Joint Pretrial Conference Statement). At the final pretrial conference, Mr. Buckins indicated that he had two potential witnesses. **Mr. Buckins shall file and serve a witness list, identifying those individuals, no later than March 18, 2015.**

B.  Defendant's Exhibits

"The defense has identified no defense exhibits at this time . . . ." Docket No. 39, at 3 (Joint Pretrial Conference Statement).

### IV.   MISCELLANEOUS MOTIONS

A.  Defendant's Motion to Disclose Rule 404(b) Evidence (Docket No. 21)

Mr. Buckins has moved for entry of an order requiring the government to give notice of any "bad acts" evidence it intends to offer at trial. *See* Fed. R. Evid. 404(b) (providing that evidence of a crime, wrong, or other act may be admissible for certain purposes but, "[o]n request by a defendant in a criminal case, the prosecutor must . . . provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial"). In its opposition brief, the government

3

provided its Rule 404(b) disclosure.  Accordingly, as Mr. Buckins implicitly acknowledges in his reply brief, this motion is moot and is therefore **DENIED**.  To the extent Mr. Buckins contends that any of the Rule 404(b) evidence is not admissible, that is addressed in the Court's rulings on the in limine motions below.

B.      Defendant's Motion for Rule 16 Discovery (Docket No. 20)

Based on the papers filed by the parties, parts of this motion have been resolved.  The following issues remain for resolution.

1.      *FCI Herlong documents*.  Mr. Buckins seeks production of "[a]ll records and documents regarding [his] placement and incarceration at the United States Bureau of Prisons facility at FCI Herlong, including: (a) all records concerning [his] release date, as well as any records concerning any changes in [his] release date; [and] (b) records reflecting a lock-down at the facility, which delayed or changed [his] release date." Mot. at 4.  The government objects to this request as being overbroad.  The government argues that it has already provided Mr. Buckins with "records pertaining to [his] transfer from FCI Herlong to the RRC," as well as documents "sufficient to show his release date and any changes to that date over time."  Opp'n at 4.  Because Mr. Buckins is limiting his request to documents related to his release date, because the release date appears to be the crux of Mr. Buckins's defense, and because the government has not argued any particular burden, **the Court orders the government to produce the requested documents by March 18, 2015**.

2.      *Grand Prairie BOP documents.*  Mr. Buckins seeks production of "[a]ll Federal Bureau of Prison records and documents, including all records maintained at the BOP facility in Grand Prairie, Texas, regarding [his] term of incarceration at the United States Bureau of Prisons, including all records concerning the defendant's release date, as well as any records concerning any changes in defendant's release date." Mot. at 4.  As above, the government objects to this request as being overbroad.  For the reasons stated above, **the Court orders the government to produce the documents by March 18, 2015**.

3. *Henthorn* Documents

In his papers, Mr. Buckins asked for disclosure of materials required to be disclosed by *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991) (officers' personnel files). The government stated in its opposition that it has complied and will continue to comply with its obligations under *Henthorn* (as well as *Brady* and *Giglio*). Because there is nothing to indicate that the government has not complied or will not comply with its obligations, this issue appears to be moot. However, should the government have any *Henthorn*, *Brady*, or *Giglio* documents, **it must produce them by March 18, 2015**.

The Rule 16(f) motion is **GRANTED** in accordance with the above.

## V.   GOVERNMENT'S MOTIONS IN LIMINE

A.   Motion in Limine No. 1 (Docket No. 37)

On September 26, 2013, Mr. Buckins walked away from the GEO Care halfway house. Several months later, on December 18, 2013, an armed robbery took place in San Francisco. The following day,

> SFPD officers on patrol . . . observed [Mr. Buckins] walk out of [a] Mercedes Benz when the officers pulled alongside that car. The officers immediately recognized [Mr. Buckins] and they knew he had a warrant for his arrest. When the officers exited their vehicle to contact [Mr. Buckins], [he] took off at a full sprint in the opposite direction. After a short chase, the officers took [Mr. Buckins] into custody.

Mot. at 2-3. In its first motion in limine, the government argues that both "the facts surrounding [1] the robbery and [2] the defendant's arrest" should be admitted. Mot. at 3. The Court agrees that the facts surrounding Mr. Buckins's arrest are admissible, but not those surrounding the robbery.

1.   Facts Surrounding the Robbery

Even taking into account that escape from federal custody "is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure," *United States v. Bailey*, 444 U.S. 394, 413 (1980), the Court finds that the facts surrounding the robbery are not inextricably intertwined with the charged escape. Thus, these facts are not admissible under Federal Rule of Evidence 404(b). *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) (stating that "we have sometimes allowed evidence to be admitted

because it constitutes a part of the transaction that serves as the basis for the criminal charge"). *Compare United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) (concluding that contemporaneous sales of cocaine and crack by the defendant were inextricably intertwined with the crime with which the defendant was charged: the sale of cocaine).

The government points out that Rule 404(b) still permits "other acts" evidence where probative of, *e.g.*, intent and knowledge rather than character. According to the government, the facts surrounding the robbery should be admitted because "one way to prove an escape in a case like this one is to show that a defendant willfully failed 'to return within the time prescribed' to the halfway house," and, "while the United States can (and intends to) put on evidence about what Defendant *did not do* afer he escaped, such as not check in with his Probation Officer, the only affirmative evidence of what Defendant *did do* is the evidence that he committed a robbery." Docket No. 44, at 4 (opposition to Mr. Buckins's motions in limine) (emphasis in original). But whether Mr. Buckins committed a robbery after his alleged escape from the halfway house has little bearing on his understanding as to whether he had been legally released. In any event, the probative value of this evidence, if any, is substantially outweighed by a danger of unfair prejudice, particularly because Mr. Buckins has not been convicted of the robbery. The Court does not intend this case to become a mini-trial on the robbery.[1] The evidence is thus additionally excluded under Rule 403.

2.   Facts Surrounding the Arrest

The facts surrounding the arrest, however, present a different situation. As noted above, under Rule 404(b), evidence of an "other act" is admissible if offered to prove, *e.g.*, a person's intent or knowledge, and not his character. Here, the government must show "[t]he willful failure of [Mr. Buckins] to remain within the extended limits of confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General." 18 U.S.C. § 4082(a). Mr. Buckins's fleeing from the police is relevant to his willfulness (*i.e.*, intent), particularly because it

---

[1] For this reason, the Court shall not permit any evidence related to the robbery, including the fact that, on the day of the robbery, the passenger in the car where the stolen items were found got out of the car and walked away from the police. *See* Mot. at 2.

6

appears that the officers were pursuing Mr. Buckins because of the arrest warrant based on his escape from the halfway house. While Mr. Buckins's raises the prospect of prejudice, any prejudice can be cured through a limiting instruction. The parties are ordered to meet and confer to determine whether they can reach agreement on a limiting instruction. **The proposed limiting instruction shall be filed with the Court by March 18, 2015.**

For the foregoing reasons, the motion in limine is **GRANTED** in part and **DENIED** in part.

B.      Motion in Limine No. 2 (Docket No. 38)

In its second motion in limine, the government asks that a jury instruction be included which defines the term "willful" (for purposes of § 4082(a)). The term "willful" is used in one of the parties' stipulated jury instructions. That instruction reads in relevant part: "The willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to the institution or facility designated by the Attorney General, shall be deemed an escape." *See* Docket No. 33, at 44 (Proposed Jury Instruction No. 8.44). The instruction, however, does not define the term "willful." The government has proposed that the following instruction be included, but Mr. Buckins has not agreed:

> The defendant's failure to remain within the extended limits of his confinement or return within the time prescribed to the institution or facility designated by the Attorney General is "willful" if it is the result of the defendant's own knowing conduct.
>
> To demonstrate that the defendant acted willfully, the government is not required to prove that the defendant intended to avoid confinement or intended to violate any specific law.

Docket No. 33, at 48 (Proposed Jury Instruction titled "Willfully – Defined").[2]

As stated at the final pretrial conference, the Court is concerned that the second paragraph in the proposed instruction will confuse the jury. The Court acknowledges that, under Ninth Circuit law, § 4082(a) does not require an intent to avoid confinement. *See United States v. Jones*, 569 F.2d

---

[2] The parties stipulated to an instruction on the term "knowingly." *See* Docket No. 33, at 45 (Proposed Jury Instruction No. 5.6) ("An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.").

7

1  499, 502 (9th Cir. 1978). Nevertheless, to instruct the jury on that point does not seem necessary,
2  particularly because Mr. Buckins does not appear to be making a defense along those lines.
3  *Compare id.* at 500 (noting that defendant failed to return to the halfway house because he was
4  being detained for a crime).

5  On the other hand, the Court is not persuaded by Mr. Buckins's contention that no
6  clarification of the word "willful" is needed. "Willful" is expressly used in § 4082(a), and therefore
7  the parties used that term in their stipulated Proposed Jury Instruction No. 8.44. The jury should
8  have an understanding of what the term "willful" means, particularly because the term "knowingly"
9  is also used in Proposed Jury Instruction No. 8.44 – and further is defined in the parties' stipulated
10 Proposed Jury Instruction No. 5.6.

11 Because the parties essentially agreed that the term "willful" as used in § 4082(a) is
12 equivalent to the term "knowing," the Court ordered the parties at the final pretrial conference to
13 meet and confer to determine whether they could reach an agreement on a modification to Proposed
14 Jury Instruction No. 8.44 – one that would reflect that "willful" means "knowing." **The parties**
15 **shall submit their proposed modification by March 18, 2015.**

16 For the foregoing reasons, the motion in limine is **GRANTED** in part and **DENIED** in part.

17 C.       Motion in Limine No. 3 (Docket No. 40)

18 In its final motion in limine, the government asks that it be permitted to introduce (1)
19 evidence of Mr. Buckins's prior felony convictions; (2) evidence of Mr. Buckins's prior disciplinary
20 infractions at the GEO Care halfway house; and (3) evidence related to Mr. Buckins's awareness of
21 the rules while at GEO Care.

22       1.       Prior Felony Convictions
23            a.       Predicate Prior Felony Conviction

24 The government argues that, regardless of whether Mr. Buckins testifies, it should, at the
25 very least, be permitted to introduce evidence of the prior conviction (a drug offense) that led to his
26 being confined at the halfway house. According to the government, this evidence is "an element of
27 the charged offense of escape." Mot. at 2. Mr. Buckins does not disagree on the latter point but
28 argues that, because of undue prejudice, the government should be content with a stipulation that "he

was initially in federal custody after conviction for a felony." Docket No. 32, at 2 (Mr. Buckins's motion).

In its papers, the government indicates that it is willing to accept Mr. Buckins's stipulation but with two conditions. First, the government argues that it should still be permitted to introduce evidence as to the date of the conviction and the length of the terms of imprisonment and supervised release. Second, the government asserts that it should be permitted to introduce a redacted version of the written judgment, showing that Mr. Buckins was convicted. At the final pretrial conference, Mr. Buckins did not voice any substantive objection, other than that the redaction should take out the term "crack cocaine" and replace it with "narcotics."

Accordingly, this part of the government's motion in limine is **GRANTED**, provided the documents are redacted.

### b. Six Prior Felony Convictions

The government argues, however, that, if Mr. Buckins does testify at trial, then it should be allowed to impeach him with evidence of six prior felony convictions (including the predicate prior felony conviction discussed above). Of the six total prior convictions, two are within the past six years; the others are more than ten years old. *See generally* Mot. at 2 (chart identifying prior convictions).

For the convictions that are more than ten years old (one theft and three drug offenses), Rule 609(b) governs. Under the rule, evidence of the prior conviction "is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). Although the Ninth Circuit has noted that prior convictions for robbery and drug offenses are "'probative of veracity,'" *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995), it has not indicated that they are highly probative as a general matter. Nor has the government presented any evidence to suggest that the specific circumstances underlying the crimes give particular insight into Mr. Buckins's character for truthfulness. The Court therefore concludes that what probative value the convictions have cannot be said to substantially outweigh their prejudicial effect as required for convictions over ten years old. *See* Fed. R. Evid. 609, Notes of Committee on the Judiciary, Senate Report No. 93-1277 (stating that

"[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances"). This part of the motion in limine is **DENIED**.

For the remaining two prior convictions (both drug offenses, including the conviction that led to Mr. Buckins's confinement at the halfway house), Rule 609(a) governs. Under Rule 609(a)(1), a prior conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). At the final pretrial conference, Mr. Buckins stated that he did not object to introduction of these two prior convictions, so long as they were "sanitized" to make reference to "narcotics" rather than "cocaine" or "crack cocaine." Accordingly, this part of the motion in limine is **GRANTED** with this condition. The Court assumes that the government has by this point produced evidence of these prior convictions to Mr. Buckins, confirming that they are in fact felony convictions (a predicate requirement before evidence of a prior conviction is admissible under Federal Rule of Evidence 609). *See* Fed. R. Evid. 609(a) (providing that prior conviction must have been punishable by death or by imprisonment for more than one year).

2. Prior Disciplinary Infractions

The government argues that evidence related to prior disciplinary infractions committed by Mr. Buckins while at the GEO Care halfway house should be admissible as part of its case-in-chief or, at the very least, as rebuttal evidence. *See* Mot. at 7.

The Court concludes that evidence of some of the infractions is admissible as part of the government's case-in-chief. More specifically, two of the infractions relate to Mr. Buckins leaving the halfway house on improper grounds. Evidence as to these infractions is admissible because it is probative of Mr. Buckins's knowledge that there were limits on his ability to leave the halfway house. Moreover, the August 2013 infraction is relevant because it apparently led to an extension in Mr. Buckins's release date. Any prejudice to Mr. Buckins can be addressed through a limiting instruction. The parties are ordered to meet and confer to determine whether they can reach agreement on a limiting instruction. **The proposed limiting instruction shall be filed with the Court by March 18, 2015.**

10

However, evidence of the drug-related infractions is not admissible, at least not as part of the government's case-in-chief. First, the offense at issue in this case is not a drug offense; rather, it is an escape.

Second, the government's argument that the evidence is relevant because Mr. Buckins's "failed drug tests . . . may well have been his motive for escaping" is not persuasive. Docket No. 44, at 2 (opposition to Mr. Buckins's motions in limine). The government acknowledges that, at the time that Mr. Buckins left the halfway house (on September 26, 2013), the results of the drug tests (taken on September 17 and 21, 2013) were *not* known. It contends, however, that Mr. Buckins knew that the results would come back positive, which would then result in a termination of his ability to stay at the halfway house and his being returned to prison. The problem with this argument is that it depends on the drug test results being accurate in the first place; if they were not, then Mr. Buckins would not have taken drugs and would not have anticipated giving a dirty test. But the government has not offered the drug test results as evidence and, even if it did, documents of the test result could well be hearsay and there would be Sixth Amendment issues with its admissibility unless the government were to put on direct non-hearsay evidence to prove the drug test results were in fact accurate – a process that would entail a mini-trial on a collateral issue which Rule 403 is designed to avoid.

To the extent the government expressed concern that it would not have any way to counter an argument by Mr. Buckins that he had no motive to escape on September 26, 2013, because he was due to be released shortly thereafter (*i.e.*, in October 2013), Mr. Buckins expressly stated at the final pretrial conference that he would *not* make any such argument in his defense. The Court will hold Mr. Buckins to that representation.

Accordingly, the Court shall not allow the government to introduce evidence of the drug-related infractions as part its case-in-chief. Only the first two items on the government's list shall be permitted. This ruling does not bar the government from asking to introduce the evidence as part of its rebuttal case, should Mr. Buckins "open the door" and make the evidence relevant.

Accordingly, this part of the motion in limine is **GRANTED** in part and **DENIED** in part.

11

### 3. Awareness of GEO Care Rules

Finally, the government asks that it be permitted to introduce evidence related to Mr. Buckins's receiving counseling regarding the rules of the halfway house. *See* Mot. at 12-13 (stating that, "[a]s part of the counseling, the defendant signed acknowledgments of understanding indicating he knew the rules he was to abide by while he lived there, including the fact that he could not leave the halfway house without permission"). Because the evidence appears to relate to rules as to under what terms Mr. Buckins could leave the halfway house (and not, *e.g.*, drug use), this part of the motion in limine is **GRANTED**. *See Brackett*, 582 F.2d at 1028 (finding sufficient evidence of willfulness based on, *inter alia*, the fact that the defendant was informed of the rules and regulations of the institution at the time of his arrival there).

## VI. DEFENDANT'S MOTIONS IN LIMINE

### A. Motion in Limine No. 1 (Docket No. 31)

This motion in limine – which concerns evidence of Mr. Buckins's disciplinary infractions and his arrest for armed robbery – has been addressed through the Court's rulings on the government's motions in limine.

### B. Motion in Limine No. 2 (Docket No. 32)

This motion in limine – which concerns evidence of Mr. Buckins's prior conviction leading to his confinement and his arrest for armed robbery – has also been addressed through the Court's rulings on the government's motions in limine.

## VII. DEMONSTRATIVES

If a party decides to use a demonstrative, that party should give the opposing party at least one day's notice prior to use of the demonstrative to ensure that any objection may be raised with the Court in advance of use.

## VIII. JURY VOIR DIRE

The Court has reviewed the government's proposed voir dire. (Mr. Buckins did not submit a proposed voir dire.) The Court intends to ask at least some of the questions proposed by the government but, in any event, each party shall be given some time (ten to fifteen minutes each) to voir dire the jury directly.

## IX. JURY INSTRUCTIONS

**The parties shall submit revised proposed jury instructions by March 18, 2015.** Thereafter, the Court shall issue its proposed jury instructions for additional party comment.

## X. JURY VERDICT FORM

The government has submitted a proposed verdict form. **If Mr. Buckins has any objection to the government's proposed form, he must make it by March 18, 2015.**

This order disposes of Docket Nos. 20, 21, 28, 29, 31, 32, 37, 38, and 40.

IT IS SO ORDERED.

Dated: March 11, 2015

_____
EDWARD M. CHEN
United States District Judge